IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

ERIC LAFOLLETTE, CAMILLE
LAFOLLETTE, DAVID BOND, and
REBECCA BOND, individually and                     No. 2:14-CV-04147-NKL
on behalf of others similarly situated,
Plaintiffs,

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, Defendant

**Report of Special Master**
1. On April 21, 2015, this court appointed me as special master to assist in the resolution of a complicated discovery dispute involving the requested production of the defendant's claims information. The court's order charged me with investigating: (a) where defendant's relevant claims-related data resides and how it is organized; (b) the most practical method for identifying, producing, and accessing it in a usable manner; (c) the most efficient method of its production; (d) the cost and burdens associated with its production and how those should be shared; and (e) the extent to which plaintiffs could narrow their requests for data considering that which was previously produced and that which defendant would produce voluntarily.
2. The court's order contemplated my retention of technical staff because of the nature of the electronic systems used by defendant to retain its claims information. I engaged the services of Matt Schwartz, a graduate of the University Of Missouri School Of Law. Mr. Schwartz is uniquely qualified to assist in matters involving electronic files (particularly those maintained by insurance companies) as, prior to attending law school, he worked in the claims departments of two major insurance companies where his duties included the creation, storage, and management of electronic claims information.
3. Mr. Schwartz and I had several contacts with counsel for both parties (on the dates reflected in our statements for services) including two personal meetings in Columbia, Missouri. It was soon apparent that, while counsel for both parties were trying in good faith to produce the discoverable data, their efforts were hampered by communication problems related to: (a) their own lack of familiarity with the information systems involved; and (b) the defendant's unique method of storing data for its own business use (as opposed to storing it for production in the event of litigation).
4. After a series of telephone conferences, written exchanges, and the initial personal meeting, Mr. Schwartz was able to develop a method of data manipulation and analysis that he and I believed would identify the data responsive to the plaintiff's discovery requests. That method required defendant to produce Xactimate and claim reserve data that overlapped the data it had already furnished to plaintiff's counsel. The Xactimate data was produced on June 12, 2015; and the reserve data on June 19, 2015. Mr. Schwartz used that data to further refine the methods he recommended.
5. On June 23, 2015 a second personal meeting was held in Columbia, Missouri. Prior to that meeting Mr. Schwartz provided me with an outline and detailed explanation of a

method he believed would enable defendant to produce the documents to which plaintiffs are entitled under the applicable court rules. I have some familiarity with the systems and methods referred to in his outline document and I agreed that it should provide a practical solution to most of what we understood to be the discovery issues remaining between the litigants. During that personal meeting with counsel we provided each side with a draft of Mr. Schwartz's memo to me. That memo has been refined slightly since that meeting but is substantively identical. A copy of it is attached to this report.

6. Mr. Schwartz's plan suggested the production of additional information consisting of: (a) all "file notes"; and (b) "file documents" to the extent those are necessary to supplement the information in the file notes. Mr. Moothart agreed to produce those items at defendant's expense to the extent they could be produced in mass form with reasonable effort by the defendant.
7. On that same day (June 23, 2015) Mr. Moothart reported that the defendant's "file notes" could be collected and produced in automated fashion; and that the process had begun. He estimated it would take approximately two weeks to finalize that process and produce the notes in electronic form. On July 3, 2015 Mr. Moothart reported that the "file documents" could not be produced in automated mass fashion and production of those would have to be done on a case-by-case basis. After discussion with all counsel about the necessity for the "file documents", I believe we all agreed that the documents in that category are needed only to the extent there is a gap, or ambiguity, in the "file notes" that they might explain. Accordingly, I suggest those can be requested if, and when, necessary on an individual basis and that production of them not cause further delay in attempting to finalize this phase of the discovery process. I believe all counsel agree.
8. As I discussed with the court shortly after my appointment, I sincerely hoped that my efforts could allow these parties to reach an agreed compromise in this discovery dispute. I have significant experience representing litigants in exactly this kind of dispute; and my observation is that court "ordered" (as opposed to court "approved") solutions are rarely satisfactory to either side. I believe the parties have participated in this process in good faith and that both sides have carefully considered the five elements of this exercise (set out in paragraph 1, above). I also believe that the parties now have the tools and understanding needed to produce, and use, the properly discoverable data possessed by defendant.
9. In conclusion, I believe this has been a successful effort. If the court believes my continued service in any role would be useful in the discovery process or resolution of this lawsuit, I am certainly willing to serve.

Respectfully submitted on July 6, 2015

J. William Turley, Special Master