LaFollette Case (contains original memo and July 10, 2015 supplemental memo)

To: Bill Turley

From: Matt Schwartz

- Since the last personal meeting the Defendant produced two additional items of discovery: Xactimate and Reserve data.

- I reviewed the transactional data (payment and reserve data) produced to plaintiffs prior to our involvement.

- The transactional data is broken into separate spreadsheets showing the defendant's separate data sources. Data in the two systems used by defendant - Claims WorkBench (at times called "MIG") and Navigator - contains unique claim numbers and should not contain overlapping data.

- The Xactimate data was not sourced from either the MIG (Claims WorkBench) or Navigator datamarts and thus represents a population of estimate data.

- The Reserve data includes a transaction item field that is either positive or negative. I understand from my own review of the data and my conversations with defendant's representatives that a positive number represents the setting or raising of a reserve and a negative number represents the lowering or closing of a reserve.

**Goal For Our June 23 Meeting**

You said our goal of this meeting is to determine (and have both parties agree on) a system of understanding and manipulating the current datasets in order to better define the scope of the class. Currently the data that will help determine what claims are members of this class is on 5 separate spreadsheets. The "occurrence number" or "claim number" is a common key to all data files but does not appear in the same format in all data files. The Xactimate data does not have

1

output for all the claim numbers from the transactional date because an estimate may not have been created in Xactimate, or record retention guidelines may have caused the estimate data to have been purged.

**Methodology For Determining Class Claims**

You asked me to give you my opinions about how to best identify data that will be useful to the court and the parties in determining the issues related to class certification. In my opinion, the data sets currently available are not "clean" and will require some reformatting to be joined properly and become useful. I know you want the parties to agree on the methodology in order to avoid the court having to order mass claim file reproduction and review. I believe both parties would be harmed if large numbers of claim files must be printed and reviewed and I also believe a systematic approach to using the available data is possible and will avoid such large-scale file production and review. So I analyzed the following questions:

- **What claims are in the class?**
  - Plaintiffs' theory of the case involves a class consisting of defendant's insureds whose loss settlement where only ACV payments were made (i.e. no replacement cost payments) and a deductible was applied. Claims with aggregate payments of under 2,500 dollars are not subject to the class since those claims were paid at replacement cost under defendant's policy and procedures.
- **How do we find class claims?**
  - Using the payment data (two spreadsheets, one for MIG and one for Navigator) filters could be applied to remove claims with aggregate values under 2,500 dollars. This could be done using a pivot table in the Excel file and using the claim number as a row value and the transaction line item (loss payment) as the

2

column value. The resulting set would then be filtered to only include claims that exceed 2,500 dollars. This could also be accomplished via a SQL statement using a SUM expression on the output for payment amount and a GROUP BY statement for the claim number.

- Once the payments under 2,500 dollars have been excluded from both data sets, a new spreadsheet with claim numbers, aggregate loss payments, and (possibly) deductible amounts should be created.
- The claims with aggregate payments under 2,500 dollars will not be considered in future iterations.
- We should then have a spreadsheet that includes only claims with aggregate values over 2,500 dollars. These claim numbers need to be related back to the original payment spreadsheets so that only these claims are populated but all the transaction information (i.e. transaction dates) is included. This could be accomplished by creating a table with the aggregated claim numbers and using a left join and an IS NOT NULL criteria statement on the original spreadsheet's claim number field. This query should create an output that includes all individual transaction amounts and transaction dates.
- The next step would be to apply filtering treatment to the subset of claims (>2,500 dollars). If only one payment was made on the claim it is not possible that both ACV and a replacement cost payment was made. Using SQL or a pivot table the transaction dates for each claim can be converted from GROUP BY to COUNT and reformatted in a table.

3

- o The result will show the claim number and the count of transaction dates associated with that claim number. Claim numbers with only one transaction date should be extracted and copied into a new spreadsheet or database table. These claims are in the class-aggregate of payments over 2,500 dollars and only one payment on the claim, thus no replacement cost payment.
- o This treatment should be repeated for both the MIG and Navigator datasets with the claims with a COUNT of transaction date of one being placed into a separate spreadsheet or database table.
- o The claims remaining (the "leftover" claims) meet the following criteria: aggregate payments greater than 2,500 dollars and more than one transaction date. Based on my work with this data, I think this is still a fairly large number of claims.
- o In attempting a systematic classification of the remaining claims the recently produced Xactimate and Reserve data can be utilized.

- **How can we use the Xactimate data?**
  - o The Xactimate data in its produced form does not include claim numbers that key or match with the claim numbers from the transaction spreadsheets. This is not entirely problematic because the body of the claim number exists in most of the Xactimate output. The Xactimate output has different formatting for the claim number with leading zeros or hyphens to separate the claim number.
  - o A LEN function can be used in Excel after creating a new column next to the claim number in the Xactimate file. The LEN function will return the number of characters from a given cell. I would apply the LEN function to the claim number

4

cell and then apply the expression to all free cells in the newly created row. (=LEN (A2)) After determining the number of characters, the patterns help reformat the claim numbers. I haven't exhausted all options but a mixture of MID, LEFT and RIGHT functions can be used to remove the leading zeros, hyphens and other formatting problems with the goal of getting the Xactimate claim numbers to match the format of the MIG and Navigator spreadsheets.

- The Xactimate datasheet includes outputs of RCV, ACV and Recoverable Depreciation. A quick expression on the spreadsheet shows that generally the RCV minus ACV is equal to the Recoverable Depreciation but that is not always the case.
- The Xactimate data could be used with the "leftover" claims. The first step will be to match the Xactimate claim number to the transaction spreadsheet claim number for the leftover claims. The basic steps for that process are discussed above.
- A SQL or other relational data query could be set up to match the Xactimate claim numbers with the transaction claim numbers. I recommend the use of a LEFT JOIN in order to determine how many matches are present. The query would include the RCV, ACV and Recoverable Depreciation fields as column outputs to compare with the transaction payment data.
- One might question using aggregated or line item (Group By) outputs for the transactional payment data. I recommend that both choices be utilized and compared to see which allows the data to be absorbed the most efficiently.

5

- I would first look for claims where the RCV and ACV amount are equal and 0 is present in the Recoverable Depreciation field. This suggests that no depreciation was taken on the estimate and can be compared with the transaction payment data. The parties will need to agree on how to treat these claims (i.e. in or out of the class).
- I would next look at claims were the Recoverable Depreciation amount is not zero and compare those with the total payments from the transactional data. If the total payments from the transactional data equal or are less than the ACV amount on the Xactimate data it is reasonable to conclude that only ACV payments were made on that claim and these claim numbers could be moved to the spreadsheet or database table for class claims.
- Since estimates do not always equal payments made on a claim, it may also be helpful to build a cushion (e.g. plus or minus 10%), to help classify claims. For example, if the total claim payments are within 10%, plus or minus, of the ACV amount those claims are ACV only and included in the class list. If the step above is used that all claims equal or less than the ACV amount are included in the class then the minus 10% buffer would not need to be used.
- The RCV value can also be used. If the aggregate payments from the MIG and Navigator database equal or exceed the RCV output from Xactimate then those claims had replacement cost payments and are not included in the class (remember we have already determined that these claims had more than one payment and exceed 2,500 dollars).

6

- Using the Xactimate data the parties should be able to classify more of the "leftover" claims as ACV only or replacement cost made and thus reduce the amount of undetermined claims files.

- **How can we use the reserve data?**
    - Not all claims in the "leftover" category will be matched to an Xactimate claim number because all issues with the formatting cannot be cured (or an estimate may not have been written).
    - The Reserve data shows the reserve activity for the same group of claims as the Payment data. My analysis of the data leads me to believe that positive values signify the opening or raising of a reserve and the negative values show the closing or lowering of a reserve.
    - Based on the deposition related to defendant's claims workflow, I believe if a reserve is readjusted after an ACV payment is made (because of the pending RD payment) the Reserve data should show that increase or decrease. Filters can be set on the data based on transaction date to count the number of increases or decreases in a reserve on a file.
    - The coverage code of "Building or Other Structures" is relatable from the Payment data to the Reserve data so the analysis will likely have to be done at that level.
    - I recommend calculating the number of positive reserves, initial opening and subsequent raises, along with the negative reserves, closing and lowering, for each claim and coverage type.

- If a reserve is lowered after an ACV payment, the transaction dates should be relatable (or at least comparable) to track with the payments made on a claim. Additional reserve increases could show the presence of a supplement payment, as opposed to a RD payment, and thus could reduce the number of "leftover" claims.
- A discussion with the parties about workflow will help refresh my memory of the deposition testimony about how reserves are adjusted for RD payments but depending on the method of adjustment the Reserve data should be helpful by showing it's either RD payments based reserve activity or supplemental payments. That will reduce the number of "leftover" claims.

**Conclusion**

It is likely that, after application of the methods described above, the number of "leftover" claims will be drastically reduced. The parties could then proceed in a number of ways. They will have a set of data that includes claims that are ACV only and thus in the class. They will also have a group of claims where RD payments were made and thus are not in the class. They could then decide to apply a percentage approach to the remaining claims based on the now known data. For example if 1,000 claims are left undetermined and the parties have discovered that 40% of claims are ACV only then for class purposes 400 of the 1,000 claims will be included. They could also agree to a random sample of the remaining claims and then an application of the percentage of ACV only claims to the group of "leftover" claims. If the parties cannot agree on an acceptable method, I assume the court could order, on its own or with your recommendation, a sample size; or simply order all "leftover" files be reproduced and examined.

**Supplement (July 10, 2015)**

On July 10, 2015 I received two files from defense counsel. They contained the file notes from both the Claims WorkBench and Navigator systems. I inspected those data files and found that claim numbers matching the applicable system's claim number are in fact provided and are very useful for joining the relevant data. These file notes are structured so that each unique time stamp (i.e. entry on a given date) generates a new row containing the new text of the file note. Depending on the number of file notes, ten or more (sometimes many more) rows of notes appear for each claim number. The substantive material in the file notes will, in my opinion, be very useful in filling most relevant information gaps in the subset of files that cannot be classified using the methods outlined earlier in this document. In general, the file notes I reviewed allow the reader to determine what payments were made. Recognized industry monikers for depreciation hold back (e.g. "recoverable depreciation", "RCV") appear frequently throughout these documents.

I recommend the parties utilize the file notes only after applying the assumptions discussed above to the transactional and Xactimate data so that review of the file notes is targeted and, therefore, not overly time consuming. For example, if a claim cannot be classified because it exceeds $2,500, has 3 payments, the total payments are less than the Xactimate estimate, and the reserve data is inconclusive, the reviewer can join the file notes and look for notes on or near the payment transaction dates to determine if the additional payments were for recoverable depreciation. My review of the file notes leads me to believe that the vast majority of the notes classify payments as either a supplemental payment or a recoverable depreciation payment; and will, therefore, be very useful in filling in gaps in the transactional data. In many

9

cases reading only the last file note, or last few file notes, will allow the reviewer to make the determination on recoverable depreciation quickly and clearly.

In summary, I believe that by adding these data sets (i.e. the file notes) to the data defendant already produced (i.e. the transactional [i.e. payment and reserve] data and Xactimate data) a reviewer will be able to easily follow the claim activity and make accurate determinations as to whether recoverable depreciation payments were made.